UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN MANN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:18-cv-00228 SRC |
| ) | |
| CINDY GRIFFITH, ) | |
| ) | |
| Respondent(s). ) | |

**Memorandum and Order**

Brian Mann, Jerome Jones, and a third accomplice robbed a St. Louis wholesale grocery store at gunpoint, and tragedy ensued. Doc. 6-7 at 4–5. Mann wore a camouflage jacket and wielded a .45 caliber semiautomatic weapon against the store employees. *Id.* Approaching the front counter, Mann took $1,000 from the clerk at the cash register and then pushed her to the floor. *Id.* . When the store owner and office manager entered the room, the robbers shot and killed them both. *Id.* Mann then turned to the clerk on the floor and shot her three times in the legs. *Id.* The robbers escaped the scene by car, but the police arrested Mann and Jones within an hour. *Id.*

A state-court jury found Mann guilty of two counts of first-degree murder, one count of first-degree assault, one count of first-degree robbery, and four related counts of armed criminal action. Doc. 6-7 at 4. The state court sentenced Mann to two consecutive sentences of life without parole for first-degree murder, one life sentence for first-degree robbery, one twenty-year sentence for first degree assault, and an additional two life sentences and two twenty-year sentences for armed criminal action. *Id.* Mann appealed his conviction to the Missouri Court of Appeals, which affirmed. Mann remains incarcerated. Docs. 1, 11. Mann now petitions this

Court under 28 U.S.C. § 2254 for writ of habeas corpus, alleging various errors by the state trial court. *Id.* For the reasons discussed below, the Court denies Mann's petition for writ of habeas corpus.

**I.    Facts and Background**

The Missouri Court of Appeals described the pertinent facts as follows:

On the morning of May 12, 2008, Ms. Cross, the mother of Defendant's [Mann's] one-year-old child, took Defendant's child and her other child to a clinic for an appointment. At the clinic, Ms. Cross received a call from Defendant, who asked Ms. Cross to pick him up from his mother's house. Ms. Cross drove to pick up Defendant in a white Malibu that she had borrowed from her cousin. When she arrived at Defendant's mother's house around 11:00 a.m., Defendant and his friend, Jerome Jones, got in the white Malibu and drove Ms. Cross back to the clinic, dropped her off, and left with the car.

At 12:30 p.m., Defendant, Mr. Jones, and a third man entered Rock Bottom Wholesale Warehouse, a wholesale grocery store, brandishing firearms. Defendant was wearing a camouflage jacket and was armed with a MAC-type semiautomatic weapon equipped with a magazine holding up to thirty .45 caliber rounds of ammunition. As the men approached the front counter, Defendant grabbed nearly $1,000 from Nimisha Patel, the clerk working the cash register. Defendant then pushed Ms. Patel, who was visibly pregnant at the time, to the floor. The store owner and office manager were in an office located behind the counter, and as they opened the door to investigate the commotion, the three gunmen opened fire, shooting the store manager nine times and the office manager eight times, killing them both. Defendant then shot Ms. Patel in the legs three times while she was lying on the floor. Another store employee, Mr. Gado, crouched behind the counter near Ms. Patel, but was not shot.

A man standing across the street from Rock Bottom, James Politte, saw Defendant, Mr. Jones, and the third man get into and leave in the white Malibu.

. . .

Five days later, on May 17, 2008, Mr. Gado, the Rock Bottom clerk, viewed two live lineups and one photographic lineup at the police station. The first live lineup included Defendant, and Mr. Gado identified him as the man who "robbed Rock Bottom, killed [the store owner and office manager], and shot Nimisha [Patel]." The second live lineup included Mr. Jones, and Mr. Gado identified him. The photographic lineup included Timothy Boykins, but Mr. Gado did not identify Mr. Boykins, and Mr. Boykins was not charged.

> Thereafter, Defendant's case was set for a jury trial.  Prior to trial, the trial court overruled Defendant's motion to suppress evidence of Mr. Gado's identification of Defendant.  The trial court also sustained the State's motion in limine to exclude evidence of the absence of the victims' blood and DNA on the pants and shoes Defendant was wearing when he was arrested.  Finally, the trial court sustained the State's motion in limine to exclude evidence pertaining to Mr. Boykins, including his participation in the pretrial lineup, his physical description, a pair of gloves with his DNA found in the white Malibu, and Defendant's acquaintance with Mr. Boykins from the neighborhood.
>
> At trial, the State called Ms. Patel, Mr. Gado, Mr. Politte, Officer Allen, Officer Shrum, Officer Henkhaus, and Ms. Cross.  The state also introduced the surveillance video from Rock Bottom, depicting a man matching Defendant's physical characteristics wearing a camouflage jacket with two other men entering the store, taking money from Ms. Patel, and shooting the store owner, office manager, and Ms. Patel.  Additionally, the state introduced evidence that Ms. Cross had told police, and later the prosecutor in an oral statement, that Defendant was wearing a camouflage jacket like the one on the man in the surveillance footage when she picked him up forty-five minutes prior to the shooting and robbery at Rock Bottom.
>
> After the State rested, the defense called Defendant's mother, Beverly Mann, and Defendant.  Both Defendant and his mother testified in support of Defendant's alibi that he was at his mother's house during the incident at Rock Bottom.
>
> At the close of the evidence, the jury found Defendant guilty on all eight counts.  The trial court sentenced Defendant as a prior and persistent offender to five life sentences, two without the possibility of parole, and three twenty-year sentences.

Doc. 6-7 at 2–3.  Mann appealed his convictions to the Missouri Court of Appeals, which affirmed.  *State v. Mann*, 347 S.W.3d 615 (Mo. App. E.D. 2011).  Mann appealed to the Missouri Supreme Court, but the Court denied transfer.  Doc. 1, 11.  Mann filed a Missouri Rule 29.15 post-conviction relief motion, which the motion court denied without an evidentiary hearing.  Doc. 6-17 at 2.  He appealed this decision, and the Missouri Court of Appeals affirmed the motion court's denial of post-conviction relief on the merits.  *Id.*  Mann now seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254.

3

## II.     Standard

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005).  Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'"  *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).  Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254).  For a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence.  *Id.* at § 2254(e)(1).

A state court's decision is "contrary to" clearly-established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'"  *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)).

4

An unreasonable application of clearly established Supreme Court precedent occurs where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

### III.   Discussion

Mann asserts four grounds for relief in his habeas petition. Docs. 1, 11. In his first ground, Mann claims that the trial court erred in precluding him from introducing evidence regarding the absence of the victims' blood and DNA on his clothing and shoes. *Id.* In his second ground, which he combines with the first ground in his petition, Mann claims that the trial court erred by excluding evidence and argument about a third party's involvement in the offense. *Id.* In his third ground, he claims that the trial court erred by failing to exclude evidence of an eyewitness identification at a lineup the police conducted without his counsel present. *Id.* In his fourth ground, Mann claims that the trial court erred by failing to exclude evidence of a witness's prior statement that the State did not disclose before trial. *Id.*

#### A.   Ground one

Mann challenges the trial court's decision to exclude evidence that his clothing and shoes did not have the victims' blood or DNA on them. *Id.* Mann argued on direct appeal that the trial court's decision violated his due process right to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 688 (1986). The Missouri Court of Appeals denied his claim, explaining that Mann had not shown that the evidence was logically and legally relevant and observing that "the due process clause . . . does not require the admission of irrelevant evidence." Doc. 6-7 at 7 (citing *State v. Boyd*, 143 S.W.3d 36, 40 (Mo. App. W.D.

2004)); *see also U.S. v. Scheffer*, 523 U.S. 303, 309 (1998) ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" (internal citations omitted)). As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated Mann's claim "on the merits" within the meaning of § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 301 (2013).

Because the Court of Appeals adjudicated his claim on the merits, Mann cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). Mann argues that the Court of Appeals' ruling "was based on an unreasonable determination of the facts" under § 2254(d)(2) because "the circumstances of the crime would logically suggest that the killers would have blood on them." Doc. 7 at 19–20. The Court disagrees.

The Court of Appeals affirmed the trial court's exclusion of the evidence because Mann failed to establish its relevance to the case during his offer of proof. Doc. 6-7 at 7–8. In Missouri, evidence must be logically and legally relevant to be admissible: "[e]vidence is logically relevant if it tends to make the existence of any fact more or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal of the case," and "[e]vidence is legally relevant if its probative value outweighs its cost—prejudice, confusion of issues, misleading the jury, undue delay, waste of time or cumulativeness." *State v. Barriner*, 111 S.W.3d 396, 400-01 (Mo. banc 2003).

6

During his offer of proof, Mann demonstrated that there was blood on the filing cabinets, desk area, and floor near the bodies of two of the victims but that Mann's clothing had no blood or DNA from the victims on it. Doc. 6-7 at 8. Mann claimed that the absence of the victims' blood or DNA on his pants and shoes was relevant because if he had committed the crime, his clothing would have had traces of the victims' blood or DNA. *Id.* But the video evidence on the record indicated that the man in the camouflage jacket did not enter the room where the photographs depicted blood on the floor. Doc. 6-6 at 26–33. Mann also failed to present evidence to the trial court that the perpetrator in the video must have had the victims' DNA and blood on his clothes based solely on his proximity to the victims. Doc. 6-7 at 8. The Court of Appeals concluded that the trial court did not abuse its discretion because Mann had not shown that "given the proximity to the shooter and the victims, the shooter would have the victims' DNA and blood on his clothes." *Id.*

The factual findings of the Court of Appeals are "presumptively correct" and they also "enjoy support in the record." *See Ryan*, 387 F.3d at 790. Nothing in Mann's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts." *See* § 2254(d)(2). Accordingly, the Court denies the first ground in Mann's petition for habeas relief.

### B. Ground two

Mann challenges the trial court's decision to exclude evidence of Timothy Boykins's involvement in the offense. Docs 1, 11. Mann wished to present this evidence of third-party guilt to demonstrate that Boykins committed the crime, as well as diminish the reliability of the eyewitness identification in the case. *Id.*; Doc. 6-7 at 20–21. Again, Mann argued in his direct

7

appeal that the trial court's exclusion of this evidence deprived him of "a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 688.

The Missouri Court of Appeals did not directly address the constitutional issue here, but it denied Mann's claim of error because under Missouri law, evidence of another person's opportunity or motive to commit the crime is not admissible "without proof that such other person committed some act directly connecting him with the crime." Doc. 6-7 at 9–10 (citing *State v. Allen*, 684 S.W.2d 417, 423 (Mo. App. E.D. 1984)). The Court finds that the Court of Appeals adjudicated Mann's claim on the merits, so the limits in § 2254(d) apply. *See Johnson*, 568 U.S. at 301 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."); *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Mann asserts that the Court of Appeals' ruling was "contrary to . . . clearly established Federal law," citing *Holmes v. South Carolina*, 547 U.S. 319 (2006). Doc. 7 at 22. In *Holmes*, the Supreme Court held that a state evidentiary rule that excluded evidence of third-party guilt based solely on the strength of the prosecution's case against the defendant was an unconstitutional exclusion of exculpatory evidence under *Crane*, 476 U.S. at 688. *See Holmes*, 547 U.S. at 331 ("[T]he State Supreme Court applied the rule that 'where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt' may (or perhaps must) be excluded.").

8

Mann wished to present evidence of Boykins's participation in the lineup, Boykins's physical description, and gloves with Boykins's DNA on them found in the white Malibu.  Doc. 1, 11.  According to Mann, this evidence would show that Boykins was the shooter in the camouflage jacket and would diminish the reliability of the eyewitness identification because the witness identified Mann at the lineup but did not identify Boykins.  *Id.*; Doc. 6-7 at 20-21.  The Missouri Court of Appeals found that Mann's evidence was inadmissible under Missouri's rule on evidence of third-party guilt:

> Defendant acknowledges that "[e]vidence that another person has an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime." *State v. Allen*, 684 S.W.2d 417, 423 (Mo. App. E.D. 1984) (quoting *State v. Easley*, 662 S.W.2d 248, 251-52 (Mo. Banc 1983)); *see also State v. Nash*, 339 S.W.3d 500, 513 (Mo. banc 2011). Defendant, however, claims that his proposed evidence was admissible because "it was reasonable for [a] juror to believe [Mr. Boykins] was involved in this case because there were three robbers, . . . gloves found in the car had [Mr. Boykin's] DNA in them, and he was put in a lineup." We disagree. The excluded evidence was insufficient to place Mr. Boykins at Rock Bottom at the time of the shooting, and thus, it did not "directly connect" Mr. Boykins with the crime. *See, E.g., State v. Lloyd*, 205 S.W.3d 893. 903 (Mo. App. S.D. 2006). Accordingly, the evidence of Mr. Boykins was not admissible to show that he, and not Defendant, was the shooter, and therefore, the trial court did not abuse its discretion in excluding evidence regarding Mr. Boykins.

Doc. 6-7 at 9–10.  Unlike the state court in *Holmes*, the Missouri Court of Appeals did not exclude Mann's evidence based on the strength of the prosecution's case but because the evidence did not "directly connect" Boykins with the crime.  *See id.*

The Supreme Court observed in *Holmes* that rules limiting evidence of third-party guilt "where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote" are "widely accepted" and were not at issue in that case.  *Holmes*, 547 U.S. at 327 (citing with approval Missouri's third-party guilt rule in *State v. Chaney*, 967 S.W.2d 47, 55 (Mo. 1998) (en banc)).  In addition, the Eighth

9

Circuit has since held that Missouri's particular evidentiary rule is constitutional under *Holmes*. *Helmig v. Kemna*, 461 F.3d 960, 966 n.3 (8th Cir. 2006) ("Helmig argues that the Missouri evidentiary rule limiting evidence of third-party guilt is unconstitutional under the Supreme Court's recent decision in *Holmes v. South Carolina*. We disagree. The Court explicitly noted that Missouri's rule is "widely accepted" and was not challenged in *Holmes*." (citations omitted)).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry*, 532 U.S. at 792. The Missouri Court of Appeals did neither. It applied Missouri's rule restricting evidence of third-party guilt because Mann's evidence did not "directly connect" Boykins to the crime. Doc. 6-7 at 10. And unlike the state court in *Holmes*, the Missouri Court of Appeals did not rely on the weight of the prosecution's evidence against Mann but only considered whether the evidence on Boykins sufficiently tied him to the crime. *See id.* The Court holds that the Court of Appeals' decision was not "contrary to . . . clearly established Federal law." *See* § 2254(d). Accordingly, the Court denies the second ground in Mann's petition.

## C. Ground three

Mann argues that the trial court erred by failing to exclude Vidyasagar Gado's testimony at trial identifying Mann as the shooter in the camouflage jacket. Docs. 1, 11. Mann claims that admission of Gado's eyewitness identification violated his Sixth Amendment right to counsel because Mann's attorney was not present during the initial police lineup. *Id.*; *see United States v. Wade*, 388 U.S. 218, 236-37 (1967). Mann raised this claim in his direct appeal, but the Court

10

of Appeals did not address the claim on its merits because Mann had not adequately preserved his claim for appellate review by failing to object to the evidence at trial. Doc. 6-7 at 6 (citing *State v. Pennington*, 618 S.W.2d 614, 620 (Mo. 1981) and *State v. Valentine*, 584 S.W.2d 92, 97 (Mo. banc 1979)). The Court of Appeals expressly declined to review Mann's claim for plain error. *Id.*

The Court finds this ground for relief procedurally barred because Mann failed to preserve the claim for review in the Missouri Court of Appeals. To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)). The procedural-default doctrine and its attendant cause and prejudice standard are grounded in concerns of comity and federalism, and they apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack. *See Murray v. Carrier*, 477 U.S. 478, 490–92 (1986).

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of

11

constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

Mann argues that the Court should "be guided by the Eighth Circuit's pronouncement related to plain error review" in *Bannister v. Armontrout*, 4 F.3d 1434, 1445 (8th Cir. 1993) (finding petitioner's claim was not procedurally barred because plain-error review by the state appellate court waived the procedural default). Doc. 7 at 23. Mann's argument is unpersuasive on two counts. First, the Court of Appeals declined to review Mann's claim for plain error:

> Although Defendant generally requests plain error review in the event his point is unpreserved, he does not provide any support for an argument that the trial court's admission of Mr. Gado's testimony was evident, obvious, and clear error resulting in either a manifest injustice or a miscarriage of justice. *See State v. Solis*, 87 S.W.3d 44, 48 (Mo.App.W.D. 2002). We, therefore, decline to review for plain error.

Doc. 6-7 at 6. Because the Court of Appeals never addressed the merits of Mann's claim under plain error, *Bannister* does not help Mann. *See Bannister*, 4 F.3d at 1445.

As importantly, even had the Court of Appeals conducted plain-error review, *Bannister* lacks any precedential value. *Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015). *Clark* determined that the rule in *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985) governs. *See id*. *Hayes* held that a state's discretionary plain-error review did not cure a procedural default, so a federal court may only review defaulted claims upon a showing of cause and prejudice. 766 F.2d at 1253; *Clark*, 780 F.3d at 77; *see also Waites v. Wallace*, 2015 WL 4429754, at *3 (E.D. Mo. 2015) (procedurally-defaulted claims that undergo plain error review by the state appellate courts are now "unreviewable, absent cause and prejudice" (citing *Clark*, 780 F.3d at 876)).

12

Even if the Court of Appeals had reviewed Mann's claim for plain error, the Court still could not review Mann's procedurally-defaulted claim unless Mann showed cause and prejudice.

Mann presents no argument to excuse his procedural default, and the record contains no indication that he can show the requisite prejudice to overcome a procedural bar, or that he is actually innocent, so his claim is procedurally barred.  *See Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (because Petitioner failed to establish cause to excuse his procedural default, the district court need not consider whether prejudice had been shown); *see also Abdi*, 450 F.3d at 338 (where Petitioner failed to present new evidence of actual innocence, the refusal to entertain his procedurally defaulted claims will not result in a fundamental miscarriage of justice). Accordingly, the Court denies the third ground in Mann's petition.

**C.     Ground four**

Finally, Mann argues that the trial court erred by failing to exclude evidence of Senobia Cross's oral statement prior to trial that Mann was wearing the same camouflage jacket as the shooter in the surveillance video.  Docs. 1, 11.  Cross testified at trial, claiming that she did not remember what Mann was wearing on May 12, 2008.  Doc. 6-5 at 61.  She admitted that she told police in a taped statement that Mann was wearing a camouflage jacket but explained to the jury that the police had told her what to say.  *Id.*  The State impeached Cross through Detective Donald Williams, who testified that Cross told him and the prosecutor in a second interview that Mann was wearing the same camouflage jacket as the one that appears in the surveillance video of the shooting.  *Id.* at 61-62.  Mann now claims that the State's failure to disclose Cross's statement before trial violated his right to present a complete defense under the Sixth and Fourteenth Amendments.  *Id.*; Doc. 7 at 25–26.

13

Mann cited the Fourth, Fifth and Fourteenth Amendments in his brief on direct appeal, but he only argued a *Brady* challenge in his analysis. Doc. 6-5 at 60-62; *see also Brady v. Maryland*, 373 U.S. 83 (1963). The Missouri Court of Appeals first held that the State had no duty to disclose Cross's oral statement under Missouri Supreme Court Rule 25.03 because Rule 25.03(A)(1) only required the prosecution to disclose "written or recorded statements" from witnesses. Doc. 6-7 at 10–11. The Court of Appeals then briefly addressed Mann's constitutional claims:

> We note that Defendant also states . . . that the trial court's admission of evidence of Ms. Cross's statements violated his rights to due process, to present a defense, and to a fair trial. In his argument, Defendant asserts that under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "[t]he Fifth and Fourteenth Amendments entitle a criminal defendant to obtain material evidence relating to either guilt or punishment." Defendant's reliance on *Brady* is flawed because to establish a *Brady* violation, a defendant must first establish that the evidence at issue was favorable to the defendant. *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 127 (Mo. banc 2010). Ms. Cross's statement to the prosecutor was harmful, not favorable, to Defendant.

Doc. 6-7 at 11. The Court finds that the Court of Appeals adjudicated Mann's claim on the merits, so the limits in § 2254(d) apply. *See Johnson*, 568 U.S. at 301.

As described above, § 2254(a) provides relief to state prisoners only for violation of the Constitution, laws or treaties of the United States. Therefore, the Court addresses only Mann's claim that the State's alleged discovery violation denied him his constitutional rights. The Court will not address Mann's state-law claim that the State violated Missouri Supreme Court Rule 25.03(A)(1) by not disclosing Cross's oral statement before trial.

Mann does not revive his *Brady* claim in his habeas petition, instead simply arguing that "[t]he impact of the nondisclosure of the statement denied petitioner his Sixth and Fourteenth Amendment rights to present a complete defense to the charge." Doc. 7 at 26. Because the Court of Appeals adjudicated his constitutional claims on the merits, Mann cannot obtain habeas

14

relief under § 2254 unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* § 2254(d).

Mann does not specify how the Court of Appeals' ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See id.* He alleges that if the State had disclosed Cross's statement before trial, he could have more fully developed his cross-examination of her. Doc. 7 at 26. Mann broadly claims that the State's actions deprived him of his Sixth and Fourteenth Amendment right "to present a complete defense," presumably referring to *Crane*, 476 U.S. at 690 ("[T]he Constitution guarantees criminal defendants 'a meaningful opportunity *to present a complete defense*.'" (emphasis added)) and *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity *to present a complete defense*." (emphasis added)). But these cases are inapposite; neither *Crane* nor *Trombetta* decided constitutional claims related to the State's late disclosure of *inculpatory* evidence.

In *Crane*, the Supreme Court held that a state court's exclusion of exculpatory evidence at trial deprived the defendant of his fundamental constitutional right to "a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690. Specifically, the Court held that the trial court's exclusion of evidence about the coercive circumstances of the defendant's confession deprived him of a fair opportunity to present a defense—whether under the Due Process Clause of the Fourteenth Amendment or under the Compulsory Process or Confrontation Clauses of the Sixth Amendment. *Id.*

15

And in *Trombetta*, the Supreme Court addressed the scope of the government's duty to "take affirmative steps to preserve evidence on behalf of criminal defendants." *Trombetta*, 467 U.S. at 486.  The Court held that the State had no constitutional duty to preserve breathalyzer samples to introduce the results of breath-analysis tests at trial.  *Id.* at 491.  The Court observed that it "has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence'" under the Fourteenth Amendment Due Process Clause.  *Id.* at 485 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982)).  The Court continued:  "Taken together, this group of constitutional privileges delivers *exculpatory evidence* into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." *Id.* (emphasis added).  The Court also noted that it previously had "rejected the notion that a 'prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel.'"  *Id.* at 488 n.8 (quoting *U.S. v. Agurs*, 427 U.S. 97, 111 (1976)).

The State's failure to disclose inculpatory evidence did not violate Mann's clearly-established constitutional rights.  Under *Brady* and its progeny, the government need not disclose inculpatory evidence to the defendant before trial.  *See United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012) ("*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."); *United States v. Roach*, 28 F.3d 729, 734 (8th Cir. 1994); *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985).  *Brady* requires the government "only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *U.S. v. Bagley*, 473 U.S. 667, 675 (1985).  Further, "[a]n interpretation of *Brady* to create a broad, constitutionally required right of discovery 'would entirely alter the character and balance of our present systems of criminal justice.'"  *Id.* at 675 n.7 (quoting *Giles v. Maryland*, 386 U.S. 66, 117 (1967) (dissenting opinion)).

16

Further, the Sixth Amendment Confrontation Clause only "guarantees an *opportunity* for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (emphasis in original) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Mann's inability to prepare for the State's impeachment of Cross did not deprive him of his Sixth Amendment rights under the Confrontation Clause either.

The Missouri Court of Appeals' ruling on Mann's claim was not "contrary to," nor did it involve an "unreasonable application" of, clearly-established law as defined by the Supreme Court, therefore it receives deference. *See* § 2254(d)(1). Cross's statement was not exculpatory evidence that the State would have to disclose under *Brady*, nor did the Court's decisions in *Crane* or *Trombetta* clearly establish a defendant's constitutional right to access inculpatory evidence before trial. Accordingly, the Court denies the fourth ground in Mann's petition.

### IV.     Certificate of Appealability

The Court finds Mann has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. 28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court will not issue a certificate of appealability as to any claims raised in Mann's § 2254 petition.

### V.      Conclusion

The Court denies Petitioner Brian Mann's petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1, 11. The Court denies Mann's [11] petition with prejudice. The Court will not issue a certificate of appealability.

So Ordered this 25th day of March, 2021.

*SLR.CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**